UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


CHARLES N. HARRIS, JR.,

        Plaintiff,

v.                                    Case No.  8:10-cv-2877-T-27AEP

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff seeks judicial review of the denial of his claim for a period of disability,

disability insurance benefits ("DIB"), and Supplement Security Income ("SSI").  As the ALJ's

decision was based on substantial evidence and employed proper legal standards, I recommend

the Commissioner's decision be affirmed.

### I.

1.      **Procedural Background**

      Plaintiff filed an application for a period of disability, DIB, and SSI.  The Commissioner

denied his claims both initially and upon reconsideration (Tr. 65-72).  Plaintiff then requested an

administrative hearing (Tr. 88-90).  Per his request, the ALJ held a hearing at which Plaintiff

appeared and testified (Tr. 34-64).  Following the hearing, the ALJ issued an unfavorable decision

finding Plaintiff not disabled and accordingly denying Plaintiff's claims for benefits (Tr. 19-33).

Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council

denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Dkt. No. 1). The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### 2. Factual Background and the ALJ's Decision

Plaintiff, who was born on October 3, 1955, claims disability beginning December 1, 2006.[1] *See* Tr. 22, 38. He completed two years of college and has an associate's degree as well as a FCC General Class License and a Vocational Electronics Certificate (Tr. 40, 162, 490). His past relevant work experience includes work as a broadcast technician, salesperson, cashier, telemarketer, and delivery person (Tr. 166, 238, 249). He alleges disability due to anxiety, bipolar disorder, and heel spurs (Tr. 158, 307).

After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: bipolar disorder, high blood pressure, and status post Achilles tendon injury (Tr.24-25). Notwithstanding the noted impairments, the ALJ determined Plaintiff retained a residual functional capacity ("RFC") to perform light work with certain limitations (Tr. 26). More specifically, the ALJ determined Plaintiff could perform light work except that he is limited to simple, routine, repetitive, three-to-four-step tasks and can occasionally perform decision-making, experience change in a work setting, or interact with the public (Tr. 26-30). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although Plaintiff had underlying impairments that could cause the symptoms alleged, his statements regarding the intensity, persistence and limiting effects of

---

[1] Although his applications are not part of the record, Plaintiff asserted at the hearing held before the Administrative Law Judge ("ALJ") that the alleged date of disability onset was December 1, 2006.

2

his symptoms were not credible to the extent they conflicted with the aforementioned RFC (Tr. 27). Considering his noted impairments, however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 31).

After determining Plaintiff could not perform his past relevant work, the ALJ relied on the assessment of a vocational expert ("VE") to determine the extent to which Plaintiff's limitations eroded the unskilled light occupational base (Tr. 32). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a small-products assembler, poly-packer and heat-sealer, and merchandise marker (Tr. 32-33). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 33).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential

evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.

Plaintiff argues here that the ALJ committed the following errors: (1) the ALJ improperly impeached Plaintiff's credibility with evidence of an arrest for charges that were dropped; (2) the ALJ failed to include limitations in responding to co-workers and supervisors in his RFC and in the hypothetical to the VE and failed to provide adequate reasons for such omission; (3) the ALJ failed to include moderate limitations in concentration, persistence and pace and moderate limitations in relations with co-workers and supervisors in his RFC; (4) the ALJ failed to properly determine the RFC without first making a proper credibility determination; (5) the ALJ erred in giving great weight to an opinion that was prior to the onset of disability; and (6) the ALJ erred in giving the opinions of nurse practitioners at Directions for Mental Health, Inc. ("Directions") mental health clinic the same consideration as treating psychiatrists (Dkt. No.

13 at 7-14). For the reasons discussed below, the Court finds the ALJ applied the correct legal standards and the decision is supported by substantial evidence.

## 1. Medical Opinions

Plaintiff asserts the ALJ improperly afforded great weight to the opinion of Dr. Mark C. Klisch, whose opinion was rendered prior to the alleged onset of disability, and improperly provided the opinions of nurse practitioners at Directions the same consideration as treating psychiatrists even though the nurse practitioners diagnosed Plaintiff with a less severe illness than that found by the ALJ to be Plaintiff's severe impairment. In assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(d), 416.927(d).

### a. Dr. Klisch

As to Dr. Klisch, the ALJ afforded his opinion great weight because it was generally consistent with the record as a whole (Tr. 31). Dr. Klisch evaluated Plaintiff in December 2005, approximately a year before the alleged disability onset date, by performing a psychological evaluation for vocational rehabilitation (Tr. 309-12). Upon examination, Dr. Klisch observed that

Plaintiff arrived promptly for his appointment, dressed casually and neatly, was well-groomed, was quiet but answered all the questions put to him about his life, was very cooperative with all aspects of the evaluation, appeared mildly depressed with a sad and quiet affect, and had a pleasant and entirely appropriate interpersonal demeanor (Tr. 310). Further, examination revealed a mild but ongoing pattern of behavioral and emotional problems and testing revealed a moderate level of personal problems and emotional concerns (Tr. 311).

According to Dr. Klisch, Plaintiff appeared to have a moderate depressive condition, which would be exacerbated by substance abuse, and had an issue with repressed anger (*id.*). Dr. Klisch opined that, if Plaintiff could remain alcohol-free, he might be able to overcome some of his emotional problems and that he would benefit from ongoing involvement in personal adjustment counseling to assist him in that regard (*id.*). In addition, Dr. Klisch noted that Plaintiff had a significant problem with anxiety, but it was likely a relatively recent problem rather than a life-long problem and therefore current life issues, such as unemployment, were the cause rather than any biological component (Tr. 311-12). Given his findings, Dr. Klisch diagnosed Plaintiff with Adjustment Disorder with Anxiety and Depressed Mood, chronic, moderate, Rule out Alcohol Abuse and assigned Plaintiff a global assessment of functioning ("GAF") of 65 (Tr. 312). Based on his assessment, Dr. Klisch found Plaintiff would have the following functional limitations relating to vocational rehabilitation at that time: difficulty dealing with frustration and stress in a work setting, problems communicating with his supervisors and coworkers, difficulty concentrating on job assignments, tendency to depreciate his abilities and skills thereby heightening his anxiety in new learning situations, and, if his mood problems or stress level

increased, a risk to deteriorate emotionally, which would lead to more intense emotional issues including severe and more debilitating levels of anxiety (*id.*). Notwithstanding, since counseling appeared to help in the past, Dr. Klisch recommended that Plaintiff should engage in relatively short-term, directive psychotherapy mental health treatment to help him learn more effective ways of relieving stress and anxiety (*id.*). He specifically noted that there was no reason to refer Plaintiff to a psychiatrist for medication because, with the treatment he described, Plaintiff had a good prognosis (*id.*).

Plaintiff contends the ALJ erred by affording great weight to Dr. Klisch's opinion since Dr. Klisch's opinion was rendered prior to the alleged disability onset date. When determining the RFC, however, the ALJ must take into consideration *all* the record evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)*; Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Barrio v. Comm'r of Soc. Sec. Admin.*, 394 Fed. App'x 635, 637 (11th Cir. 2010). Here, the medical evidence of record includes Dr. Klisch's opinion. The ALJ therefore had to consider the evidence in determining the RFC. Even so, the ALJ did not rely solely upon the opinion of Dr. Klisch in formulating Plaintiff's RFC. Rather, he considered the entire medical record and, in doing so, afforded great weight to Dr. Klisch's opinion but also gave great weight to the psychological evaluation completed at the Boley Centers or Behavior Health Care, Inc. ("Boley") from 2009, the records from Directions from 2007 through 2009, and the consultative psychological evaluation and examination conducted in May 2007 by Dr. Michael Greenberg as each was generally consistent with the record as a whole (Tr. 26-31). In making his findings as to Plaintiff's mental impairments (Tr. 30-31), the ALJ even considered the assessments of two

state agency psychological consultants, from May 2007 and August 2007 respectively (Tr. 344-57, 433-46) and explicitly afforded little weight to those assessments because the ALJ found that evidence received at the hearing level supported a finding that Plaintiff's mental impairments caused more than a minimal limitation on functioning (Tr. 31). Accordingly, the ALJ properly supported his findings with medical records both prior to and after the alleged disability onset date. *See Tipton v. Astrue*, 8:09-cv-1990-T-TGW, 2011 WL 164326 *5 & *8 (M.D. Fla. Jan. 19, 2011) (finding nothing inappropriate with respect to an ALJ's consideration of medical assessments made by physicians prior to the disability onset date where the ALJ supported a credibility finding with medical records prior to and after the alleged disability onset date). Furthermore, the ALJ properly afforded the opinion of Dr. Klisch great weight as it was consistent with the other medical evidence of record relating to Plaintiff's mental impairment from 2007 through 2009. *See, e.g.,* Tr. 340-43, 503-04. As such, the ALJ properly considered Dr. Klisch's opinion and afforded appropriate weight to that opinion.

### b. Nurses at Directions

Similarly, the ALJ afforded great weight to the progress records documented by the nurse practitioners at Directions since the ALJ found those records generally consistent with the record as a whole (Tr. 31). Plaintiff contends the ALJ erred by considering the progress records from the nurse practitioners because "they diagnosed claimant with an illness lesser than that found by the ALJ to be claimant's severe mental impairment" (Dkt. No. 13 at 13). Indeed, in his decision, the ALJ found Plaintiff had the severe impairment of bipolar disorder (Tr. 24). The nurse practitioners at Directions had previously diagnosed Plaintiff with only an adjustment

disorder and unspecified mood disorder (Tr. 327-31). According to Plaintiff, the nurse practitioners' opinions as to the severity of Plaintiff's condition "were colored by their misdiagnosis" and were therefore not "supportable" (Dkt. No. 13 at 13). Further, Plaintiff contends the opinions are not entitled to the same weight as Dr. Syed Zaidi, a psychiatrist Plaintiff sought treatment from at Boley, who diagnosed Plaintiff with bipolar disorder (Tr. 483-514).

Although not considered "accepted medical sources," the opinions of nurse practitioners may be used by the ALJ to show the severity of a claimant's impairments and how it affects a claimant's ability to work. 20 C.F.R. §§ 404.1513(a) and (d), 416.913(a) and (d); *see* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). In his decision, the ALJ appropriately utilized the records from Directions to show the progression of Plaintiff's mental impairment and the severity of the mental impairment over a period of three years. As the record indicates, Plaintiff sought treatment at Directions with some regularity from 2007 through 2009 (Tr. 325-31, 449-59, 471-78). He started seeking mental health treatment at Directions shortly after a voluntary admission for a psychiatric hospitalization at Personal Enrichment Through Mental Health Services ("PEMHS") in January 2007 for feelings of depression and suicidal thoughts, during which PEMHS diagnosed Plaintiff with bipolar disorder and placed him on medication (Tr. 313-325). During the course of his treatment at Directions, Plaintiff reported his mood stabilized and depression lifted while he was taking his medication (Tr. 329). At nearly every appointment, Plaintiff reported to the clinic as neatly groomed; looking his stated age; pleasant; cooperative with good eye contact; normal motor movement and gait; speech was normal, spontaneous, and relevant; mood was euthymic; affect was full and appropriate to the conversation; thought processes were linear and

goal directed indicating no thought disorder; denied suicidal or homicidal ideation, plan, or intent; had no audio or visual hallucinations; memory and concentration were good; cognitive functioning was grossly intact; and insight and judgment were fair (Tr. 327-28, 449-54, 475-78). These findings comport with, rather than contradict, the findings of Dr. Zaidi (Tr. 503-07), as well as the findings from Dr. Greenberg's consultative examination (340-43). The only difference between the nurse practitioners' findings and that of the physicians of record is the diagnosis. Dr. Zaidi diagnosed Plaintiff with bipolar disorder most recent depressive episode (Tr. 503-07) and Dr. Greenberg diagnosed Plaintiff with major depression, recurrent, moderate and anxiety disorder NOS and rule out alcohol abuse/dependence (Tr. 340-43). The nurse practitioners' assessed Plaintiff with an adjustment disorder and unspecified mood disorder (Tr. 327-28). In fact, one of the nurse practitioners explained her reasoning for ruling out bipolar disorder as a diagnosis in February 2007:

> At this time I will keep the patient on the current medication as he is new to me; however, I am not convinced of the diagnosis of bipolar disorder as he denies significant inconsistencies in his life. He denies anger problems, periods of decreased need for sleep or any other classic symptom of bipolar disorder, as well as the fact that he is getting treated for the first time at the age of 51 and this would not be likely in the case of a patient with bipolar disorder. I suspect he has a depressive disorder that was triggered by work stressors as well as the trauma he experienced after his arrest in 2005.

(Tr. 331). The records from Directions support the nurse practitioner's rationale for failing to assess Plaintiff as suffering from bipolar disorder and explain the discrepancy with the later diagnoses of Dr. Zaidi and Dr. Greenberg. As far as the other findings and observations made by the nurse practitioners, the records are consistent with the other evidence of record.

11

Given their consistency with the other medical evidence, the ALJ appropriately afforded great weight to the records from the nurse practitioners at Directions. Moreover, given that the ALJ was required to consider *all* the evidence of record, the ALJ had to consider the progress records from the nurse practitioners in formulating Plaintiff's RFC. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Phillips*, 357 F.3d at 1238; *Barrio*, 394 Fed. App'x at 637. Accordingly, based on the foregoing, the ALJ's consideration of the records from the nurse practitioners at Directions was proper and substantial evidence supports his decision.

## 2. RFC

Regarding the RFC, Plaintiff contends the ALJ erred by failing to include moderate limitations in concentration, persistence and pace and by failing to include moderate limitations, or any limitations, in Plaintiff's relations with co-workers and supervisors or to explain such an omission. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). To determine a claimant's RFC, an ALJ makes an assessment based on *all* of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

In his decision, the ALJ found Plaintiff had moderate difficulties in social functioning and moderate difficulties with regard to concentration, persistence, and pace (Tr. 25). Notwithstanding, as to social functioning, the ALJ noted that Plaintiff had a past history indicating supportive relationships with friends, teachers, and some family members at times (Tr.

25, 493). Additionally, although Plaintiff claimed to isolate himself, he admittedly talked to his girlfriend and pastor daily and attended church services regularly (Tr. 25, 214). With respect to concentration, persistence and pace, Plaintiff admitted that, although it takes him a while to comprehend written instructions, he can follow written instructions and can follow clear spoken instructions or will ask questions if he does not understand (Tr. 25, 213-14).

After consideration of Plaintiff's impairments, the ALJ found that Plaintiff retained the RFC to perform light work except that he was limited to simple, routine, repetitive, three-to-four-step tasks and could occasionally perform decision-making, experience changes in a work setting, or interact with the public (Tr. 26). The ALJ did not include limitations relating to Plaintiff's interaction with co-workers or supervisors because the medical evidence does not support such limitations. In fact, only Dr. Klisch, who examined Plaintiff in 2005, suggested potential limitations regarding Plaintiff's ability to concentrate and to interact with co-workers or supervisors.

Dr. Klisch opined in 2005 that Plaintiff had difficulty dealing with frustration and stress in a work setting, would have difficulty concentrating on his work assignments, and would have problems communicating with his supervisors and coworkers (Tr. 312). Prior to Dr. Klisch's examination, Plaintiff admittedly had difficulty with a supervisor and quit that job as a result (Tr. 218, 309). Subsequent to Dr. Klisch's finding, however, no other medical source identified limitations with respect to Plaintiff's ability to maintain concentration, persistence, or pace or to maintain social functioning or properly interact with co-workers or supervisors. For example, in May 2007, consultative psychologist Dr. Greenberg met with Plaintiff and conducted a clinical

13

interview and mental status examination (Tr. 340-43). Plaintiff presented as alert and fully oriented; had generally logical, coherent, and goal-directed speech although he was defensive and probably evasive; had no indications of delusions, hallucinations, mania or thought disorder; affect was constricted; mood appeared depressed, anxious, and angry; denied suicidal ideation; stated he sleeps two hours at night, overeats at times, is withdrawn, and has a low energy level; was able to recall two of three common objects after five minutes; auditory attention and concentration were in the average range; fund of information was average; and arithmetic ability, abstract thinking, and verbal reasoning were low average (Tr. 342). Dr. Greenberg diagnosed Plaintiff with Major Depression, Recurrent, Moderate; Anxiety Disorder NOS; and rule out alcohol abuse/dependence, which was reportedly in remission (*id.*). Dr. Greenberg assigned Plaintiff a GAF of 65 (*id.*). Dr. Greenberg did not identify any limitations as a result of Plaintiff's mental impairment.

In May 2007, Plaintiff presented to Dr. Thomas Beaman for a disability physical (Tr. 414-15). Dr. Beaman found Plaintiff's complaint primarily psychiatric in nature and noted Plaintiff reported that his last anxiety attack was in January 2007 when he was at PEMHS and that he had problems with depression, isolation, and retaining information (Tr. 414). During the physical examination, Plaintiff cooperated well with the examination, interacted appropriately with Dr. Beaman and his staff, Plaintiff's speech was clear and easily understood, and Plaintiff was able to produce normal speech (Tr. 415). Although he was tasked with a physical examination, Dr. Bearman's impression as to Plaintiff's mental impairments was that Plaintiff

suffered from bipolar disorder and depression (*id.*). He did not, however, suggest any limitations based upon that impression.

Further, although the ALJ afforded the assessments little weight (Tr. 31), two state agency psychological consultants reviewed Plaintiff's medical records and found only mild restrictions in activities of daily living and in Plaintiff's ability to maintain social functioning and to maintain concentration, persistence, or pace (Tr. 344-57, 433-46). In May 2007, Dr. Arthur Hamlin opined that Plaintiff had a non-severe adjustment disorder with mixed presentation (Tr. 347) and noted that the severity of Plaintiff's alleged functional limitations was not consistent with the updated objective findings and recent outpatient mental status (Tr. 356). Similarly, in August 2007, Dr. James Levasseur opined that Plaintiff had major depressive disorder, an anxiety disorder, and a history of substance abuse, which resulted in only mild limitations but no compelling indication of a severe disorder except Plaintiff's past substance abuse problems, which he did not consider to be in remission (Tr.436, 438, 441, 443, 445).

Following that, Plaintiff continued to attend appointments at Directions, but those appointments were unremarkable and consisted mainly of 15-minute or 30-minute follow-up appointments every few months to review medication and update that information (Tr. 449-59, 471-78). Throughout the course of his treatment with Directions, the nurse practitioners did not suggest Plaintiff had any limitations as a result of his mental impairments that would restrict his ability to work.

Subsequently, in May 2009, Plaintiff presented to Boley reporting that his bipolar disorder prevented him from functioning well in a job situation (Tr. 483). Plaintiff further

15

reported his symptoms included mania for days followed by a rapid decline to a depressive episode that would last for days, during which he stated he would not be able to fulfill the duties of employment (Tr. 483, 490-91)..  In addition, Plaintiff reported that he had applied for Social Security disability benefits and believed he was disabled (Tr. 485). Plaintiff was diagnosed with bipolar disorder and assigned a GAF of 45 (Tr. 484).  Further, Plaintiff was assessed as having adequate physiological functioning, found to be able to perform activities of daily living and motivated for treatment, and his communication skills were adequate (Tr. 485).  The record indicates that Plaintiff reported he was currently responding well to medication and appeared to be "pscyhiatrically stable" at that time (Tr. 492).  Plaintiff also reported that he had adjusted well to living in Morningside Safe Haven group home and followed the rules and schedule, participated in group meetings, and showed concern for his continued progress toward recovery and independence (Tr. 494).  Again, no limitations were noted by any mental health professional at Boley during the course of Plaintiff's treatment there.

Given the foregoing, the ALJ properly omitted from Plaintiff's RFC any mention of moderate limitations as to concentration, persistence and pace or moderate limitations as to Plaintiff's interactions with co-workers and supervisors.  Further, to the extent the ALJ found limitations based on Plaintiff's mental impairments, he appropriately accounted for those limitations in finding that Plaintiff retained the RFC to only occasionally perform decision-making, experience changes in the work environment, or interact with the public (Tr. 26).  The medical evidence, as well as the ALJ's detailed discussion of such evidence in his decision, provides substantial support for the ALJ's findings and conclusion in that regard.  The ALJ thus

applied the proper legal standards and his decision as to Plaintiff's RFC is supported by substantial evidence.

### 3. Hypothetical

Plaintiff additionally contends that the ALJ erred by failing to pose a hypothetical question to the vocational expert that included all of Plaintiff's limitations. Indeed, the ALJ must pose an accurate hypothetical that takes into account all of the claimant's impairments. *Wilson*, 284 F.3d at 1227; *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ is not, however, required to include findings in a hypothetical question not found to be supported by the record. *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004). In this instance, Plaintiff argues that the ALJ erred by failing to include limitations in responding to co-workers and supervisors in the hypothetical provided to the VE and failing to provide an adequate reason for such omission. As detailed more fully above, the ALJ did not find that the record supported any limitations as to Plaintiff's ability to interact with co-workers and supervisors, and, therefore, the ALJ did not include those limitations in the hypothetical (Tr. 59-61). The record in fact supports such a conclusion. Accordingly, the ALJ applied the correct legal standard and his decision is supported by substantial evidence.

### 4. Credibility

Finally, Plaintiff asserts that the ALJ improperly impeached his credibility with evidence of an arrest for charges that were dropped and failed to properly determine Plaintiff's RFC without initially making a proper credibility determination. In social security disability cases, credibility determinations fall within the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th

Cir. 2005). Typically, the ALJ makes credibility determinations regarding Plaintiff's subjective complaints of pain and must provide specific reasons for his credibility finding. *Holt v. Sullivan*, 921 F.2d 1221,1223 (11th Cir. 1991); Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225; *see* 20 C.F.R. §§ 404.1529, 416.929. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225.

As the ALJ discussed at length, and as discussed in greater detail herein, the record shows that the objective medical evidence does not support Plaintiff's subjective complaints regarding his impairments (Tr. 26-31). Indeed, the ALJ discussed all of the medical evidence as it related to the determination of Plaintiff's RFC (*id.*). Plaintiff fails to point to any subjective complaints or symptoms not considered by the ALJ in making the RFC determination (Dkt. No. 13 at 11). Rather, Plaintiff simply argues that the ALJ failed to properly determine the RFC without first making a credibility finding. In his decision, the ALJ stated the RFC then explained his specific reasoning for that finding, including his assessment of Plaintiff's subjective complaints and credibility (Tr. 26-31). This is all that the ALJ was required to do. *See Holt*, 921 F.2d at 1223.

Plaintiff also takes issue with the ALJ's reference to Plaintiff's jail time for a cocaine charge, which was later dropped (Tr. 29). Taken in context, the reference provides support for the

pattern of inconsistencies the ALJ found in the record leading to the ALJ's finding that Plaintiff may not be fully credible. The ALJ stated:

> The claimant provided inconsistent information regarding his history of alcohol and substance abuse at the May 2007 consultative examination. He denied a history of drinking binges, despite records that he had reported being admitted to PEMHS after a bout of heavy drinking in early 2007. He denied a family history of substance abuse, although other records indicate that his father was an alcoholic. Moreover, he denied ever using cocaine or any other drugs, despite records that he had been in jail on a cocaine charge which was dropped (Exhibit 5F). The inconsistent statements suggest that the claimant may be less than fully credible.

(Tr. 28-29). The ALJ did not rely singularly upon Plaintiff's cocaine-related arrest to make a credibility determination. Instead, the ALJ highlighted multiple inconsistencies in the record in making the credibility determination. As the record reflects, these inconsistencies exist and thus provide support for the ALJ's finding that Plaintiff may not be fully credible. *See, e.g.,* Tr. 309-10 (Dr. Klisch's report of Plaintiff's December 2005 psychological evaluation discussing, among other things, Plaintiff's arrest for a DUI which had occurred a few months prior to that evaluation); Tr. 320 (an intake assessment in January 2006 for PEMHS indicating Plaintiff denied being charged with a DUI); Tr. 341 (report from consultative psychological evaluation conducted in May 2007 in which Dr. Greenberg notes that Plaintiff denied a family history of substance abuse even though Plaintiff had previously informed Directions that his father was an alcoholic). Accordingly, the ALJ properly found Plaintiff's complaints were not fully credible, and his credibility determination is supported by substantial evidence.

**IV.**

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that:

(1)     The decision of the Commissioner be **AFFIRMED**; and

(2)     The Clerk of Court be directed to enter final judgment in favor of the

Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on this 24th day of February, 2012.


_____

ANTHONY E. PORCELLI
United States Magistrate Judge

## **NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*


Copies furnished to:
Hon. James D. Whittemore
Counsel of Record